IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DR. AKEDA PEARSON               *
                                *
        v.                      *
                                *   Civil Action No. CCB-17-2358
BOARD OF EDUCATION OF ANNE      *
ARUNDEL COUNTY, *et al.*,       *

## MEMORANDUM

Pending before the court is a motion for summary judgment, filed by defendants Board of Education of Anne Arundel County and Mamie Perkins in her official capacity (collectively "the Board"). For the reasons stated below, the court will grant the motion for summary judgment.

## FACTUAL AND PROCEDURAL HISTORY[1]

The following facts are undisputed. Plaintiff Dr. Akeda Pearson, an African American woman, was employed in the Office of Equity and Human Relations ("OEHR") of the Board of Education of Anne Arundel County ("BOE") from January 2011 to July 31, 2014. The purpose of the OEHR was to address achievement disparities between racial groups in Anne Arundel public schools. (Liverman Deposition, pp. 16–17, Pl.'s Resp. in Opp. to Def.'s Mot. for Summary Judgment ["Pl.'s Resp."] Ex. 3, ECF No. 72-3). Dr. Pearson's responsibilities included community outreach and human relations, as well as investigation and reporting of bias-motivated incidents within the Anne Arundel public schools.

On August 1, 2013, defendant Mamie Perkins, an African American woman, became the Interim Superintendent of Schools for the BOE. (Aff. of Mamie Perkins, ECF No. 65-7 at 1). On May 28, 2014, Ms. Perkins announced the reorganization of the OEHR, which became the Office

---

[1] The parties have a lengthy history. Given the extensive record in this case, the court will only recite the minimum necessary facts here.

1

of Equity and Accelerated Student Achievement ("OEASA"). (*Id.* at 2). The same day, Dr. Pearson was informed that her position would be eliminated as part of the reorganization. (*Id.*). Ms. Perkins told Dr. Pearson that she would be temporarily reassigned, and that if she did not apply and get selected for another position in the BOE, her employment would terminate on July 31, 2014. (*Id.* at 3).

Shortly thereafter, Dr. Pearson applied for the position of Specialist for School and Community Partnerships in the newly-created OEASA. Anthony Alston, the Executive Director of OEASA and an African American man, led the interviews. (Aff. of Anthony Alston, ECF No. 65-15 at 1). Mr. Alston wanted to hire two people to fill positions as Specialist for School and Community Partnerships. (*Id.*). Dr. Pearson and five other candidates interviewed for the position on or about July 16, 2014. (*Id.*). Each candidate's interview performance was rated on a numerical scale; scoring cards from the July 16, 2014, interviews show that Dr. Pearson ranked fifth out of the six candidates. (*Id.*; Interview Scoring Card, Def.'s Mot. for Summary Judgment ["Def.'s Mot."] Ex. H-1, ECF No. 65-16). The highest-scoring candidate was Caucasian and not offered a position. (Aff. of Anthony Alston, ECF No. 65-5 at 1). The candidates with the second- and third-highest scores were offered positions. (*Id.*). The candidate ranked second declined the offer, but the candidate ranked third, an African American woman, accepted the position. (*Id.* at 2). Dr. Pearson was not offered a position in the OEASA and her employment with BOE was terminated on July 31, 2014.

On August 12, 2014, Mr. Alston conducted a second round of interviews to fill the other position of Specialist for School and Community Partnerships; Dr. Pearson was not re-interviewed during this round. The highest-scoring candidate during the second round of interviews was a Caucasian man. (*Id.*; Interview Scoring Card, Def.'s Mot. Ex. H-2, ECF No.

2

65-17). Mr. Alston offered him the position and he accepted it. (*Id.*).

Dr. Pearson initiated suit on August 17, 2017. Her original complaint named BOE, Ms. Perkins, and BOE employees Arlen Liverman and George Arlotto as defendants. On March 19, 2018, this court granted motions to dismiss claims asserted against Ms. Perkins, Mr. Liverman, and Mr. Arlotto in their individual capacities. Dr. Pearson subsequently filed an amended complaint, naming BOE and Ms. Perkins in her official capacity as defendants (collectively "the Board"). The Board filed a motion for summary judgment, Dr. Pearson filed her response in opposition, and the Board filed a reply to Dr. Pearson's response. The issues have been fully briefed and are ripe for review.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69

3

(4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

### A. Title VII Claims of Discrimination and Retaliation

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee on the basis of, *inter alia*, the employee's race. 42 U.S.C. § 2000e-2(a). A plaintiff may avoid summary judgment on a Title VII claim through "two avenues of proof." *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (overruled on other grounds by *University of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). The first avenue requires the plaintiff to present direct or circumstantial evidence that "raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). If the plaintiff lacks direct or indirect evidence of discrimination, she may proceed using the second avenue: the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Diamond*, 416 F.3d at 318. Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. *McDonnell*, 411 U.S. at 802. The requirements of a prima facie case differ depending on the type of discrimination alleged. *Jenkins v. Baltimore City Fire Dept.*, 862 F. Supp. 2d 427, 444 (D. Md. 2012) (citing *McDonnell*, 411 U.S. at 802 n.13). If a plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285. If the defendant provides a non-discriminatory reason for the adverse employment action, "the

4

burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (internal quotation marks omitted)). This court will analyze Dr. Pearson's claims pursuant to the *McDonnell Douglas* framework.[2]

### i. Reorganization of the OEHR

Dr. Pearson first claims that the Board's decision to reorganize the OEHR was racially discriminatory. The reorganization of OEHR, which eliminated Dr. Pearson's position but did not result in her immediate termination, was an adverse employment action that can be fairly analogized to a "reduction in force" (RIF). *Cf. Corti v. Storage Tech. Corp.*, 304 F.3d 336, 339–40 (4th Cir. 2002) (characterizing the employer's elimination of the plaintiff's position, coupled with an offer to the plaintiff to accept a lower-ranking position within the company, as part of a "reduction in force"); *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 720–21 (4th Cir. 2002) (analyzing the plaintiff's demotion from full-time to part-time status as part of a "reduction in force"). To establish a prima facie case of discrimination in the RIF context, the plaintiff must show that: (1) she was in a protected class; (2) her position was selected for elimination; (3) her job performance met the employer's expectations; and (4) the employer "did not treat the protected status neutrally, or there were other circumstances giving rise to an inference of discrimination." *See Dugan*, 293 F.3d at 720–21. It is undisputed that Dr. Pearson can establish

---

[2] Dr. Pearson appears to contest the Board's use of the *McDonnell Douglas* framework in their motion for summary judgment. (Pl.'s Resp., ECF No. 72 at 17–18). While it is true "[i]t is left to the plaintiff's discretion whether to proceed by direct and indirect evidence or by means of the *McDonnell Douglas* burden-shifting framework," *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015), Dr. Pearson offers no direct or circumstantial evidence of discrimination. In fact, she devotes most of her argument in opposition to summary judgment to establishing that the Board's proffered reasons for all alleged adverse employment actions were pretexts for discrimination. Accordingly, the court will analyze Dr. Pearson's Title VII claims under the *McDonnell Douglas* framework.

5

the first three elements of the prima facie case. See ECF No. 65-1 at p. 11 (conceding that Dr. Pearson is a member of a protected class, that her position was selected for elimination, and that her job performance met the employer's expectations). While the Board asserts that Dr. Pearson cannot meet the fourth element of the prima facie case, the burden of establishing a prima facie case under the *McDonnell Douglas* framework is "not onerous." *See Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019) (quoting *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 253–54 (1981)). The court will assume without deciding that Dr. Pearson has pled sufficient facts to establish a prima facie case of discrimination with respect to the reorganization of the OEHR.

Pursuant to the *McDonnell Douglas* framework, the Board has articulated a non-discriminatory reason for the reorganization of the OEHR. Specifically, they offer that the OEHR was reorganized because the new Interim Superintendent, Mamie Perkins, believed the OEHR was "ineffective in achieving its goals" due to departmental inefficiencies and adversarial relationships with schools. (Aff. of Mamie Perkins, ECF No. 65-7 at 2). According to Ms. Perkins, "[t]he racial composition of the employees in the OEHR was not a factor at all in [her] decision to reorganize the Office into the OEASA." (*Id.* at 5).

A plaintiff meets her burden of showing that an employer's proffered reason for the adverse employment action is a pretext for discrimination if she can show that the explanation is "unworthy of credence," although proof of falsity will not always be sufficient. *See Westmoreland*, 924 F.3d at 727 (citing *Reeves*, 530 U.S. at 146) ("[T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reasons for its action does not *compel* judgment for the plaintiff.") (emphasis in original); *see also Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004). Dr. Pearson cannot meet this burden. Dr. Pearson contends that these reasons are

"unworthy of credence" because the OEHR was, in fact, effectively achieving its goals. But Dr. Pearson's statistics[3] regarding improved academic and disciplinary outcomes for African American students during the time of OEHR's existence, (Pl.'s Resp. at 5–6, ECF No. 72), do not necessarily refute Ms. Perkins's opinion that OEHR was ineffective. According to Ms. Perkins, the OEHR was ineffective because "the equity and human relations aspects of the OEHR were not acting in concert with the school performance aspect of the OEHR" and "OEHR's relationship with the schools was more adversarial rather than collaborative." (Aff. of Mamie Perkins, ECF No. 65-7 at 1–2). Dr. Pearson may disagree with the Board's reasons for reorganizing OEHR, but her disagreement does not make the proffered reasons "unworthy of credence." *See Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900–01 (4th Cir. 2017) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [adverse employment action]."); *see also Mereish*, 359 F.3d at 338–39 (plaintiffs' assertion that their positions were important to national security did not constitute sufficient evidence of pretext).

Dr. Pearson offers no other circumstantial evidence sufficiently probative of racial discrimination to rebut the Board's stated reasons for the reorganization. Dr. Pearson claims that the reorganization of OEHR "deviated from the standard practices followed for reorganizations" and "singled out and targeted the all-African American staff of OEHR." (Pl.'s Resp., at 20, ECF No. 72). Specifically, she alleges that she was treated differently than Caucasian employees whose positions were eliminated as part of the reorganization of another BOE office. (*Id.*). But

---

[3] In its reply to Dr. Pearson's response to the motion for summary judgment, the Board objects to Dr. Pearson's use of these statistics because they were not "provided in a form that constitutes admissible evidence per Fed. R. Civ. P. 56." (Def.'s Reply at 5, ECF No. 73). As the admissibility of these statistics does not alter the outcome of this opinion, the court need not address the issue.

7

Dr. Pearson is unable to show that any differential treatment was the *product* of racial discrimination.[4] Mere assertions of discrimination are insufficient to counter an employer's evidence of non-discriminatory reasons for an adverse employment action. *Dugan*, 293 F.3d at 722. Dr. Pearson fails to meet her burden of establishing that the Board's reason for eliminating her position was a pretext for discrimination. Accordingly, the court will grant summary judgment on this claim.

### ii.    Dr. Pearson's Non-Selection for the OEASA Position

Dr. Pearson also claims that her non-selection for the position of Specialist for School and Community Partnerships in the OEASA was the result of racial discrimination. To establish a prima facie case for discriminatory failure to hire, a plaintiff must show that: (1) she belonged to a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) after her rejection, the position remained open and the employer continued to seek similarly-qualified applicants, or filled the position with an applicant outside the protected class. *McDonnell*, 411 U.S. at 802; *E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 851 (4th Cir. 2001). It is undisputed that Dr. Pearson is a member of a protected class, she applied for and was qualified for the position in OEASA, she was rejected despite her qualifications, and OEASA continued seeking applications after Dr. Pearson's rejection. Thus, she can establish a prima facie case of discriminatory failure to hire.

The Board articulates a non-discriminatory reason for their non-selection of Dr. Pearson

---

[4] It is also worth reiterating that Ms. Perkins, who decided on the reorganization, identifies as African American. There is, of course, no "conclusive presumption that an employer will not discriminate against members of his own race." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998). But, especially absent any direct evidence of discrimination, the fact that both Ms. Perkins and Dr. Pearson identify as African American is a factor supporting the likelihood that Ms. Perkins's decision was not motivated by any racial animus toward Dr. Pearson.

8

for the position in OEASA: they state that she performed poorly in the interview and made disparaging remarks about the Anne Arundel County school system. (Aff. of Anthony Alston at 1–2, ECF No. 65-15). Dr. Pearson cannot meet her burden of showing that the Board's stated reason, supported by the contemporaneous score cards, was a pretext for discrimination. *See E.E.O.C.*, 243 F.3d at 852. Dr. Pearson disputes her low score on the interview, (Pl.'s Resp. at 13–14, ECF No. 72), and denies making disparaging remarks about the school system, (*id.* at 21–22), but offers no additional evidence to support her assertion that the Board's explanation is untruthful.[5,6]

Dr. Pearson's claim that her qualifications were superior to the Caucasian man selected for one of the two open positions in the OEASA similarly fails to prove pretext. By Dr. Pearson's own admission, the Caucasian man was also qualified for the position. The position of Specialist for School and Community Partnerships required a master's degree and at least four years of experience; Dr. Pearson notes that the Caucasian man had a master's degree and approximately 14 years of experience. (Pl.'s Resp. at 14–15, ECF No. 72). The Board does not dispute that Dr. Pearson was qualified for the position; rather, they claim that her poor interview performance was the reason for non-selection. Subjective opinions on an interviewee's "general interview performance . . . are not per se pretextual," when general interview performance is relevant to the position. *See Holley v. North Carolina Dep't of Admin., N.C.*, 846 F. Supp. 2d 416, 438 (E.D.N.C. 2012) (citing *Mallory v. Booth Refrigeration Supply, Co.*, 882 F.2d 908, 910–11 (4th Cir. 1989)). According to the job description for Specialist for School and Community Partnerships, the position requires strong interpersonal and communication skills.

---

[5] The court again notes that Mr. Alston, the person who decided not to hire Dr. Pearson, is African American. *See supra* text accompanying note 4.
[6] The court does not consider Dr. Pearson's contention that Mr. Alston "had an incentive to be untruthful," (Pl.'s Resp. at 22, ECF No. 72), as sufficient additional evidence to support her claim.

9

See ECF No. 72-5 at 4–5. General interview performance is relevant to assessing those skills. *See Holley*, 846 F. Supp. at 438 ("One of the primary purposes of [] live interviews [is] to measure the applicants' [interpersonal and communication] skills."). Indeed, the African American woman who was hired for the position in OEASA scored higher in the interview than Dr. Pearson, (Aff. of Anthony Alston at 1–2, ECF No. 65-15), and the Caucasian man who was hired received the highest score in the second round interviews, (*id.* at 2). Dr. Pearson cannot show that the Board's stated reason for her non-selection for the position in OEASA was a pretext for discrimination. Accordingly, her claim fails and the court will grant summary judgment.

### iii. Retaliation

Dr. Pearson's final claim under Title VII is that the Board retaliated against her because she reported and investigated discrimination and academic disparities in Anne Arundel public schools. ECF No. 72 at 26. To establish a prima facie case for retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action. *Foster*, 787 F.3d at 250 (internal citation omitted).

Dr. Pearson cannot establish a prima facie case of retaliation because she did not engage in a protected activity. While a plaintiff's burden on this element is "not onerous," she must at least show that she "communicate[d] to her employer a belief that the employer has engaged in . . . a form of *employment discrimination*." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015 (quoting *Crawford v. Metropolitan Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276) (2009) (emphasis added). While Dr. Pearson contends that, as part of her job, she reported discrimination against students in Anne Arundel County public schools, she does not

claim that she ever communicated to her employer a belief that they were engaged in discriminatory employment practices.[7] She thus fails to make a prima facie case on her retaliation claims.[8, 9]

## B. Title VI Claims of Discrimination and Retaliation

In addition to her Title VII claims, Dr. Pearson asserts that the Board violated Title VI of the Civil Rights Act of 1964 when they engaged in the alleged acts of discrimination and retaliation. ECF No. 17 at 8–9. Title VI prohibits discrimination on the basis of, *inter alia*, race, in "any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Employment discrimination claims are only proper under Title VI "where a primary objective of the Federal financial assistance is to provide employment," 42 U.S.C. § 2000d-3, or where the alleged employment discrimination "necessarily causes discrimination against primary beneficiaries of federal aid," *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 785 (E.D. Va. 2003) (citing *Trageser v. Libbie Rebailitation Ctr., Inc.*, 590 F.2d 87, 89 (4th Cir. 1978) (overturned on other grounds)).

The analysis of Title VI claims at the summary judgment stage is similar to the analysis of Title VII claims. A plaintiff must provide either direct evidence of discrimination or proceed under the *McDonnell Douglas* burden-shifting framework. *Glenn v. Wells Fargo Bank, N.A.*, 710 F. App'x 574, 577–78 (4th Cir. 2017) (citing *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th

---

[7] Dr. Pearson correctly notes that the "manager rule," which requires an employee to "step outside his or her role" as an employee to engage in a protected activity, does not apply in the Title VII context. *See DeMasters*, 796 F.3d at 421 (internal quotations omitted). But as Dr. Pearson does not claim that her role involved communicating complaints of employment discrimination, this argument is inapposite.
[8] Even if Dr. Pearson's job function did constitute protected activity, she has shown no causal link whatsoever between her performance of her job duties and Ms. Perkins's decision to reorganize OEHR. And it is Dr. Pearson's burden to show that Ms. Perkins's "desire to retaliate" against Dr. Pearson was the "but-for cause" of the reorganization. *See Villa*, 858 F.3d at 900 (quoting *Nassar*, 570 U.S. at 352).
[9] Dr. Pearson claims that as part of the Board's retaliation against her, she was denied tuition reimbursement. The court finds that Dr. Pearson did not engage in a protected activity; accordingly, this claim need not be addressed.

11

Cir. 2014)); *see also Bryant v. Independent Sch. Dist. No. I-38 of Garvin Cty., OK*, 334 F.3d 928, 929–30 (10th Cir. 2003) (stating that the "basic allocation of burdens in a Title VI case" follows the *McDonnell Douglas* scheme); *Fuller v. Rayburn*, 161 F.3d 516, 518 (8th Cir. 1998) (upholding a district court's application of the *McDonnell Douglas* framework to a Title VI claim).

Dr. Pearson alleges that her claims are proper under Title VI because the Board received federal funds for the benefit of its students, (Pl's Resp. at 28 n.3, ECF No. 72), and that the employment discrimination she suffered impacted those students, (*id.* at 28–29). The court will assume without deciding that Dr. Pearson's claims are proper under Title VI. Nevertheless, because the Title VI analysis mirrors the Title VII analysis conducted earlier in this opinion, *supra* Part A, the court will grant summary judgment on Dr. Pearson's Title VI claims.

## CONCLUSION

For the foregoing reasons, the court will grant the Board's motion for summary judgment. A separate order follows.

9/10/19
Date

/s/ CCB
Catherine C. Blake
United States District Judge

12